

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 11 2005

CLERK, U.S. DISTRICT COURT
By _____
        Deputy

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GENEVA RUTH SCOTT, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. |
| § | 5:04-CV-205-C |
| § | |
| JO ANNE B. BARNHART, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

## REPORT AND RECOMMENDATION

Plaintiff Geneva Ruth Scott seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of Social Security, in which the Government Pension Offset (GPO), 20 C.F.R. § 404.408a (2004), was applied to her application for Wife's Insurance Benefits. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this case to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment.

The questions presented for review are (1) whether the Commissioner erred in applying the GPO to Scott's application for benefits and (2) whether the Commissioner should be estopped from applying the GPO to her case. After reviewing the administrative record and the arguments of both parties, this court recommends that the District Court affirm the Commissioner's decision denying Scott's application.

## I.

Under § 402(a) and (b), retirement benefits may be payable to a husband or wife based on the Social Security earning records of his or her spouse. However, in cases in which an applicant also receives a pension from a governmental entity, any benefit to which such an applicant may be entitled is subject to reduction by the GPO. 42 U.S.C. § 402(k)(5)(A); 20 C.F.R. § 404.408a. Specifically, benefits received on account of a spouse's Social Security earnings must be reduced by two-thirds the amount of the applicant's pension and up to zero dollars, if necessary, when (1) the applicant receives a pension from a federal, state, or local government agency and (2) the applicant was employed by the agency in work that was "not covered by Social Security on the last day of employment." 20 C.F.R. §§ 404.408a(a),(d). In many cases, application of the GPO completely diminishes any benefit an applicant would otherwise receive. *See* 20 C.F.R. § 404.408a(d).

Scott worked as a teacher for 31 years before retiring in May 2002. (Tr. 50.) At that time, most Texas teachers were entitled to a pension under the Texas Retirement System of Texas (TRST) and were employed by districts who did not cover their full-time teachers under Social Security. Upon retirement, many of these teachers avoided application of the GPO by working their last day of employment at a school district or in a different job within their own school district that was "covered by Social Security." Thousands of Texas teachers successfully utilized this "loophole" for years in order to avoid an offset in their spousal

retirement benefits.[1] Crucial to this loophole and to this case, however, is that the school district must have entered into a Section 218 Agreement with the Commissioner of Social Security under which the parties agreed to extend Social Security coverage to individuals employed by the school district.[2] *See* 42 U.S.C. § 418.

In this case, the offset would apply to Scott because at retirement she would receive a pension from the TRST and was employed by Abernathy Independent School District (Abernathy ISD), which did not cover its full-time teachers under Social Security.[3] (Tr. 50-51, 77.) Scott wanted to avoid application of the GPO and sought advice in April or May of 2002 from the Social Security Administration (SSA) office in Plainview, Texas, before retiring at the end of May 2002. (Tr. 65.) Scott testified that David Landeros, a representative at the office, told her that it was legal to avoid application of the GPO and that

---

[1] Congress closed this loophole by amending 42 U.S.C. § 402(k)(5)(A) so that application of the GPO is avoided only when an applicant has worked his or her last sixty months, rather than last day, of employment for an entity that is covered by Social Security. Social Security Protection Act of 2004, Pub. L. No. 108-203 § 418, 118 Stat. 483, 531-32 (2004) (current version at 42 U.S.C. § 402(k) (2004)). Before this amendment, congressional auditors reported that the loophole could cost $450 million and that one-fourth of all Texas public education retirees, which was 3,521 individuals, used the loophole in 2002. *Texas Educators Work One Final Day in Effort to Cash in Before Loophole Closes*, LUBBOCK AVALANCHE J., June 30, 2004.

[2] Underlying the requirement that a state agency enter a Section 218 Agreement is the general rule that individuals employed with State agencies are excluded from participating in the Social Security program. 42 U.S.C. § 410(a)(7). However, such individuals are not excluded from participation in Social Security and, thus, may benefit from the program when the state entities that employ them enter into a Section 218 Agreement to affirmatively include their employees in the Social Security program. 42 U.S.C. § 410(a)(7)(A). Thus, exclusion of state employees from the Social Security system is mandatory and the exception to the rule provided under §410(a)(7)(A) applies only when the state agency initiates an agreement with the Commissioner under Section 418. *See Sec'y of Health Educ. & Welfare v. Snell*, 416 F.2d 840, 843 (5th Cir. 1969) (citing 42 U.S.C. § 418).

[3] Application of the GPO to Scott's case would completely offset any benefits to which she would otherwise be entitled. (Tr. 14, 51.)

3

she could do so by working one day at a school district that would withhold Social Security in addition to TRST contributions from her wages. (Tr. 66.) Scott considered a number of options for her last day of employment but ultimately worked as a substitute teacher at Borden County Independent School District (Borden County ISD) on May 31, 2002. (Tr. 69-70, 73-74.) For her work that day, Borden County ISD paid her $75.00 in gross wages and deducted $4.65 for Social Security taxes and $4.99 for TRST contributions. (Tr. 47.)

Scott testified that after she retired, Landeros reviewed her file on several occasions and told her that everything was in order and that she should receive benefits. (Tr. 69.) She further testified that on August 20, 2002, she telephoned Landeros and he reviewed her file and again told her that "everything appeared to be complete" and that he would forward her file for processing. (Tr. 70.) The following morning, however, Landros telephoned Scott and informed her that he had learned through the SSA Office in Lubbock, Texas, that the GPO would be applied in her case because Borden County ISD did not have a Section 218 Agreement with the Commissioner. (*Id.*) Evidently, prior to the summer of 2002, the Commissioner's representatives either ignored or did not know that Borden County ISD did not have a Section 218 Agreement with the Commissioner and had allowed retiring teachers to avoid the government pension offset by working at the districts on their last day of employment. (*See, e.g.*, Tr. 81.)

Scott contends that she complied with the provisions of 20 C.F.R. § 404.408a and that the Commissioner's decision is incorrect. She further contends that 20 C.F.R. § 404.408a

and the offset provision therein does not mention the requirement of a Section 218 Agreement and that the Commissioner seeks to amend the provisions of § 404.408a by adding the requirement.

Scott's contention that Section 218 Agreements are not mentioned in 20 C.F.R. § 404.408a is correct but irrelevant. Section 404.408a addresses the application of the GPO rather than the measures a governmental entity must take to cover its employees in the Social Security program. *See id.* Governmental entities, such as Borden County ISD, must look to 42 U.S.C. § 418(a) and 20 C.F.R. §§ 404.1200(a), 404.1214(a) for the appropriate measures they may take to cover employees under Social Security. Thus, it was the responsibility of Borden County ISD to initiate an agreement under Section 218 with the Commissioner, *id.*, and the district's failure to do so is a matter between Scott and Borden County ISD rather than Scott and the Commissioner. *See Snell*, 416 F.2d at 843.

Further, the Commissioner did not err in applying the GPO to Scott's application for spousal retirement benefits. It is indisputable that Borden County ISD did not have a Section 218 Agreement with the Commissioner. (Tr. 41; *see also* Tr. 14, 79-80.) It is equally indisputable that in the absence of a Section 218 Agreement between Borden County ISD and the Commissioner, Scott did not work for an employer covered by Social Security on her last day of employment. Because Scott's last day of employment was not covered by Social Security, the GPO must be applied to reduce any spousal retirement benefits to which she may be entitled, 20 C.F.R. § 404.408a, and Scott's contentions to the contrary must be rejected.

## II.

The doctrine of equitable estoppel is rooted in equity and is judicially applied to avoid injustice. *Heckler v. Cmty. Health Servs., Inc.*, 467 U.S. 51, 59 (1984); 28 AM. JUR. 2D *Estoppel and Waiver* § 1 (2004). Although courts may apply estoppel, it is not favored in the law and should be applied rarely and only in extreme circumstances. 28 AM. JUR. 2D *Estoppel and Waiver* § 3 (2004). Further, an individual asserting estoppel against the government bears a heavy burden. *Duthu v. Sullivan*, 886 F.2d 97, 99 (5th Cir. 1989), *cert. denied*, 496 U.S. 936 (1990) (citing *Heckler*, 467 U.S. at 60). Not only must such a plaintiff show the traditional elements of estoppel - (1) that the defendant was aware of the facts, (2) that the defendant intended his act or omission to be acted upon, (3) that the plaintiff did not have knowledge of the facts, and (4) that the plaintiff reasonably relied on the conduct of the defendant to his substantial injury - but he or she must prove affirmative misconduct on the part of the Government. *See Linkous v. United States*, 142 F.3d 271, 278 (5th Cir. 1998) (citation omitted).

Scott argues that school teachers worked their final day of employment with Borden County ISD and successfully avoided the GPO for years, that Borden County ISD was unaware of the need for a Section 218 Agreement with the Commissioner, and that the Commissioner's representatives at the SSA's Plainview Office were unaware of the requirement and provided her with erroneous advice. She argues that she relied on advice provided her by the Commissioner's representative and that because the Commissioner is charged with carrying out Social Security programs, the Commissioner cannot argue that she

did not intend for applicants to rely on information provided by SSA representatives. Finally, Scott contends that the Commissioner's failure to educate her own employees regarding the requirement of a Section 218 Agreement and her failure to implement a system by which applicants might be informed of the requirement was affirmative conduct sufficient to trigger estoppel.

Although the court sympathizes with Scott, equitable estoppel is not appropriate in her case. The application of estoppel against a government agency is particularly disfavored in cases in which disbursement of funds from the Treasury is at issue. *See, e.g., Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 434 (1990); *see also Schweiker v. Hansen*, 450 U.S. 785, 788 (1981). In fact, based on concerns related to the separation of powers, the United States Supreme Court has never applied equitable estoppel in a plaintiff's favor to require payment of funds from the Treasury. *See, e.g., Richmond*, 496 U.S. at 434. In this case, as in *Richmond*, the plaintiff requests estoppel for the purpose of requiring the Government to pay money not authorized by statute. *Id.* The court in *Richmond* refused to apply estoppel, acknowledging that the Appropriations Clause in the Constitution provides that money may not be paid from the Treasury unless authorized by an act of Congress, *id.* at 424 (citations and quotations omitted), and that granting requests such as Scott's would "render the Appropriations Clause a nullity" in violation of the Constitution. *See id.* at 428. On this basis alone, estoppel should not issue from this court.

In addition, contrary to Scott's contentions, the facts of her case do not demonstrate affirmative action on the part of the Commissioner sufficient to trigger estoppel. Scott is

7

certainly not the first applicant to rely on erroneous information from the Commissioner's representatives that ultimately led to a denial of benefits. The United States Supreme Court considered a similar claim in *Hansen* in which the plaintiff relied on erroneous advice from a representative who failed to follow SSA policy. 450 U.S. at 786. Recognizing "the duty of all courts to observe the conditions defined by Congress for charging the public treasury," the court refused to apply estoppel holding that courts are not authorized to overlook even procedural requirements that apply to the application of Social Security benefits. *Id.* at 788-91.

The Fifth Circuit Court of Appeals has likewise considered such claims and rejected them. *See Jones v. Dept. of Health & Human Servs.*, 843 F.2d 851 (5th Cir. 1988); *Duthu*, 886 F.2d 97. In *Duthu*, the court considered a plaintiff's request for estoppel based on her claim that she relied on erroneous advice from SSA representatives. 886 F.2d 97. In that case, the plaintiff sought Surviving Child's Benefits on behalf of her children in 1979 one month after their father and her husband disappeared and was presumed dead as a result of a plane crash. Upon her first inquiry, an employee of the SSA informed her that she could not file an application on behalf of her children until she obtained evidence of her husband's death, and that without such evidence she would be required to wait seven years before she could file an application.

Despite this advice, the plaintiff inquired again a few months later with another SSA employee and was given the same advice. Her next inquiry was in October 1985 and she was, again, given the same advice. Shortly thereafter, one of the plaintiff's friends suggested

that she contact an SSA administrator. The plaintiff did so and in November 1985, nearly six years after her husband disappeared, the SSA administrator informed the plaintiff that she could apply for benefits immediately and that she could have done so in January 1980 when she made her first inquiry. *Id.* at 98. The plaintiff filed an application for benefits in December 1985, and the SSA determined that one of her children no longer met the age requirement to receive benefits and would receive no benefits and that the other child was entitled to benefits only as of May 1985. *Id.*

The plaintiff sought equitable estoppel claiming that the actions of the SSA employees constituted affirmative misconduct. The court rejected the plaintiff's claims. In so doing, the court emphasized that the plaintiff had never filed a written application and that although the SSA employees had advised her that it would be useless to file an application, they had not refused to allow her to do so. *Id.* at 100. The court held that refusing to allow the plaintiff to file an application might amount to affirmative misconduct sufficient to trigger equitable estoppel but that in the absence of such, the "misinformation and ineptitude" of the SSA employees were blunders that would not estop the Government. *Id.*

Likewise, in this case, the Commissioner's representatives did not refuse to allow Scott to work her last day of employment at a school district that had entered a Section 218 Agreement with the Commissioner. Rather, they provided erroneous advice as to whether she could avoid the government pension offset. The United States Supreme Court has held that a governmental agency "cannot be expected to ensure that every bit of informal advice given by its agents . . . will be sufficiently reliable to justify expenditure of sums of money,"

*Heckler*, 467 U.S. at 64, and that "[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit." *Richmond*, 496 U.S. at 420 (quoting *Utah Power & Light Co. v. United States*, 243 U.S. 389, 408-09 (1917)). Thus, the court has advised that "Men must turn square corners when they deal with the Government." *Id.* at 63 (citing *Rock Island A.& L.R. Co. v. United States*, 254 U.S. 141, 143 (1920)). For these reasons, applying equitable estoppel would be inappropriate in Scott's case.

### III.

In Social Security appeals the Commissioner's determination in regard to a claimant's application for benefits will be upheld if the Commissioner used proper legal standards to evaluate the evidence and the determination is supported by substantial evidence 42 U.S.C. § 405(g) (2004); *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993) (citations omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support the Commissioner's decision, and if the court finds that the decision is supported by substantial evidence, it is conclusive and must be affirmed. *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002) (citations omitted). Because the Commissioner correctly applied the law to Scott's case and used proper standards to evaluate the evidence, the application of the GPO to her case is supported by substantial evidence and must be affirmed.

### IV.

Based on the foregoing discussion of the issues, evidence and the law, this court recommends that the United States District Court affirm the decision of the Commissioner

and dismiss Scott's Complaint with prejudice.

## V.

Pursuant to 29 U.S.C.§ 636(b)(1), any party has the right to serve and file written objections to the Report and Recommendation within 10 days after being served with a copy of this document. The filing of objections is necessary to obtain de novo review by the United States District Court. A party's failure to file written objections within 10 days shall bar such a party, except upon grounds of plain error, from attacking on appeal the factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

Dated: _April 11_, 2005.

NANCY M. KOENIG
United States Magistrate Judge